UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HARRISON BLACK,

         Plaintiff,

                     Case # 17-CV-557-FPG

v.

                     DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.
_____

## INTRODUCTION

    Harrison Black brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

    Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

    On February 26, 2009, Black applied for SSI with the Social Security Administration ("the SSA").[1] Tr.[2] 415-17. He alleged disability since July 15, 2001 due to schizophrenia, kidney failure, diabetes, manic depression, speech impairment, paranoia, and auditory hallucinations. Tr.

---

[1] Black previously filed a Title XVI claim on May 8, 2008. Tr. 162. That claim was initially denied on September 14, 2008. Tr. 442. Rather than appeal that denial, he filed the instant claim. *See* ECF No. 12-1 at 5 n. 3.

[2] References to "Tr." are to the administrative record in this matter.

446. Black's claim was denied on June 25, 2009 (Tr. 188-91) and he requested a hearing on August 14, 2009 (Tr. 192). On March 24, 2011, Black appeared *pro se* and testified at a hearing before Administrative Law Judge William E. Straub ("ALJ Straub"). Tr. 118-38. On May 23, 2011, ALJ Straub issued a decision finding that Black was not disabled within the meaning of the Act. Tr. 140-56. Black filed a request for review of ALJ's Straub's decision with the Appeals Council on June 6, 2011. Tr. 289-91. On May 3, 2012, the Appeals Council remanded the case to ALJ Straub for further administrative proceedings. Tr. 157-61.

On April 23, 2013, Black and a vocational expert ("VE") appeared and testified at a second hearing before ALJ Straub. Tr. 83-117. On June 10, 2013, ALJ Straub issued a decision finding that Black was not disabled within the meaning of the Act. Tr. 163-81. Black again requested Appeals Council review. Tr. 354-58. On January 8, 2015, the Appeals Council granted Black's request and again remanded the case for further administrative proceedings—directing that the case be assigned to another ALJ. Tr. 182-86.

On May 13, 2015, Black, a medical expert, and a VE appeared and testified at a third hearing before Administrative Law Judge Eric Glazer ("the ALJ"). Tr. 36-82. On November 16, 2016, the ALJ issued a decision finding that Black was not disabled within the meaning of the Act. Tr. 9-25. On April 20, 2017, the Appeals Council denied Black's request for review. Tr. 1-5. Thereafter, Black commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a

2

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of

a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Black's claim for benefits under the process described above. At step one, the ALJ found that Black had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Black has substance abuse disorder, affective disorder, and psychotic disorder, which constitute severe impairments. *Id*. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 16-17.

Pursuant to the SSA's regulations regarding drug or alcohol abuse ("DAA") the ALJ considered how Black's substance abuse affected the disability finding. Tr. 19-25; *see* 42 U.S.C.

§§ 423(c)(1)(A)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. The ALJ concluded that if Black stopped abusing substances he would still have severe impairments but that those impairments, alone or in combination, would not meet or medically equal any Listings impairment. Tr. 19-20.

Next, the ALJ determined that if Black stopped abusing substances he would retain the RFC to perform the full range of work at all exertional levels but with nonexertional limitations. Tr. 21. Specifically, the ALJ found that Black can understand, remember, and carry out simple and repetitive instructions, respond appropriately to supervisors and co-workers, and perform work with time off task accounted for by normal breaks, but he cannot perform work beyond simple, routine, and repetitive tasks or exercise judgment beyond simple work-related decisions. *Id*.

At step four, the ALJ indicated that Black has no past relevant work. Tr. 18, 24. At step five, the ALJ relied on the VE's testimony and found that Black can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 24-25. Specifically, the VE testified that Black could work as a cleaner, kitchen helper, dining room attendant, silver wrapper, and cafeteria attendant. Tr. 24. Accordingly, the ALJ concluded that Black was not "disabled" under the Act. Tr. 25.

## II. Analysis

Black argues that remand is required because the ALJ failed to evaluate whether his impairments met or equaled the Listing 12.05C requirements at step three of the disability analysis.[3] ECF No. 12-1 at 19-26. The Court agrees.

---

[3] Black advances another argument that he believes requires reversal of the Commissioner's decision. ECF No. 7-1 at 16-25; ECF No. 9 at 3-6. The Court need not reach that argument, however, because it disposes of this matter based on the ALJ's failure to consider whether Black's impairments met or equaled the criteria of Listing 12.05C.

### A. Step Three Standard

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's RFC and proceeds to the next steps of the analysis. 20 C.F.R. § 416.920(e)-(f).

To match an impairment in the Listings, the claimant's impairment "must meet all of the specified medical criteria" of a Listing. *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citation omitted).

An ALJ must explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Importantly, it is the ALJ's responsibility—and not the job of the Commissioner's attorney—to "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). The Court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Id.* "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate

that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted); *see also Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (affirming step three decision even though ALJ did not set forth a specific rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence").

### B. Listing 12.05C

Listing 12.05 relates to intellectual disability. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 12.05 (effective Aug. 12, 2015 to May 23, 2016).[4] "Intellectual disability" is defined as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.* If the claimant's impairment satisfies this diagnostic description and one of four sets of criteria—specified in paragraphs A through D—the ALJ will find that his impairment meets the Listing. *Id.* Those criteria are:

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
B. A valid verbal, performance, or full scale IQ of 59 or less; OR
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

---

[4] The ALJ rendered his decision on November 16, 2016, and therefore this is the relevant version of Listing 12.05 for evaluating the severity of Black's mental impairment. On September 26, 2016, the SSA finalized new regulations revising this portion of its Listings, which became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). The regulations provide the following instruction regarding retroactive application: "We expect that Federal courts review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 n.1; *see also, e.g., Gushen v. Comm'r of Soc. Sec.*, No. 16-cv-10003, 2017 WL 1807605, at *2 n.2 (E.D. Mich. Feb. 23, 2017).

*Id.*

With respect to paragraph C, a claimant must establish the following to meet the Listing: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." *Green v. Colvin*, No. 14-CV-6632P, 2016 WL 943620, at *9 (W.D.N.Y. 2016) (citation omitted).

Here, Black argues that the ALJ erred in "fail[ing] to evaluate Medical Listing 12.05(C) at all" at step 3 "or even consider a cognitive disorder at step two." ECF No. 12-1 at 26.

**C.  Application**

The ALJ found that Black did not meet the criteria for Listings 12.04, 12.06, or 12.09 but did not specifically address whether Black met the criteria for Listing 12.05C. Tr. 20. Black argues that the ALJ's failure to consider whether he met the criteria for Listing 12.05C constituted legal error because "where a claimant's symptoms appear to match those described in the Medical Listings, an ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." ECF No. 12-1 at 19.

The Commissioner argues that the ALJ did not err since he "was not required to discuss Listing 12.05 because Plaintiff did not meet his burden to show valid IQ scores between 60 and 70 or deficits in adaptive functioning" and the ALJ's determination at step three "was sufficient for judicial review because he discussed Plaintiff's IQ scores and evidence showing a lack of deficits in adaptive functioning." ECF No. 13-1 at 18-19. Additionally, the Commissioner cites portions of the Social Security Administration's Program Operations Manual System ("POMS") that indicate that where the Commissioner designates a physician or psychologist, his or her

judgment on the issue of equivalence "must be received as expert opinion." ECF No. 13-1 at 19 (citing POMS DI 24515.013.B.1; 416.926(e)).[5]

### 1. A Valid IQ Score of 60-70

As Black correctly points out, "IQ scores between 71 and 75 can provide a basis for a determination of *equivalency* to Listing 12.05C." *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 425 (W.D.N.Y. 2003) (citing POMS § DI 24515.056(d)(1)(c)) (emphasis in original).

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's [sic] (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

*Id.* (quoting POMS § DI 24515.056(d)(1)(c)). Here, Black's full scale IQ score was measured at 71—just one point above the 60-70 range. Tr. 23. Thus, the fact that Black did not meet the IQ score range is not dispositive of whether the ALJ should have considered whether he met the criteria of Listing 12.05. Rather, it turns on whether the description of Black's symptoms in the medical evidence appeared to match those described in Listing 12.05C.

### 2. Deficits in Adaptive Functioning

To demonstrate an intellectual disability under § 12.05, "claimants also must satisfy a diagnostic description contained in the introductory paragraph of that section by making a threshold showing that they suffer from significantly subaverage general intellectual functioning

---

[5] The Court notes that although the POMS "is the authorized means for issuing official SSA policy and operating instructions regarding the agency's interpretation of regulations," it "has no legal, binding effect." *Ellis v. Apfel*, 147 F.3d 139, 142 n.3 (2d Cir. 1998) (citing POMS § 2002.001 and *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *see also Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y. 1994) (noting that the POMS "is entitled to persuasive authority" but "is not published in the Federal Register, and does not have the force of law").

with deficits in adaptive functioning initially manifested prior to age 22." *Brothers v. Colvin*, 233 F. Supp. 3d 320, 327 (N.D.N.Y. 2017) (citations and internal quotation marks omitted).

> Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life. Accordingly, courts have held that if one is able to satisfactorily navigate activities such as living on one's own, taking care of ... children ... without help ... sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction, one does not suffer from deficits in adaptive functioning. While a qualifying IQ score may be *prima facie* evidence that an applicant suffers from significantly subaverage general intellectual functioning, § 12.05, there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning.

*Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (internal quotation marks, alterations, and citations omitted).

The Commissioner argues that the evidence does not support a finding that Black has deficits in adaptive functioning based on the following: Black's ability to perform daily activities, including personal hygiene and meal preparation (Tr. 741, 1390), do housework, shopping, take public transportation, count change, and use the library (Tr. 96-98, 101, 103, 457, 462, 741, 1390). *See* ECF No. 13-1 at 18. However, the ALJ failed to consider the fact that Black attended special education classes, including a remedial reading course in ninth grade (Tr. 44, 452); dropped out of school sometime before 10th grade (Tr. 94, 124, 452, 1388); exhibited cognitive functioning that was "below average based upon his limited vocational attainment and limited education and having been in special education classes" at an April 22, 2009 examination with Dr. Robert Hill, Ph.D.; has difficulty with reading, writing, and simple mathematics (Tr. 44, 124-25), and has never maintained an unskilled job for longer than a few months at a time (Tr. 71, 423-24).

Though it is true that an ALJ's unexplained step three conclusions may be upheld if they are supported by substantial evidence, "where the evidence on the issue of whether a claimant meets or equals the listing requirements is [in] equipoise and credibility determinations and inference drawing is required of the ALJ to form his conclusions at step [three], the ALJ must

10

explain his reasoning." *Green*, 2016 WL 943620, at *8 (alterations in original) (citations and internal quotation marks omitted); *see also Carpenter v. Comm'r of Soc. Sec.*, No. 7:12-CV-1759 GLS, 2014 WL 859160, at *4 (N.D.N.Y. Mar. 5, 2014) ("[W]hile the ALJ clearly did not believe that the record as a whole supported a diagnosis of mild mental retardation, she failed to specifically address deficits in adaptive functioning—or the listing 12.05(C) requirement of suffering an additional significant limitation—and this is not a situation [w]here application of the correct legal standard could lead to only one conclusion.") (citations and internal quotation marks omitted).

Based on the foregoing, the Court cannot conclude that substantial evidence supports the finding that Black failed to demonstrate a deficit in adaptive functioning—thus the ALJ's failure to specifically address the requirements of Listing 12.05C constitutes legal error.

### 3. Commissioner's Remaining Arguments

The Commissioner's remaining arguments amount to impermissible *post hoc* rationalizations of the ALJ's decision. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The ALJ did not explain why Black failed to meet Listing 12.05C, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

The Court therefore finds that the ALJ's failure to consider whether Black, with an IQ score of 71 and symptoms described in the medical evidence that appear to match those required by Listing 12.05C, did not meet the Listing constitutes legal error. Because it appears that Black may

meet Listing 12.05C, the ALJ was obligated to explain why he concluded otherwise. *See Rockwood*, 614 F. Supp. 2d at 273. The ALJ's decision lacks "an accurate and logical bridge from the evidence to [his] conclusion" and therefore the Court cannot conduct a meaningful review. *Hamedallah*, 876 F. Supp. 2d at 142. Moreover, the remainder of the ALJ's decision does not permit the Court to "glean the rationale" behind his conclusion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). There is no indication that the ALJ considered whether Black met the criteria of Listing 12.05C or, if he did, why he concluded Black did not meet that Listing's criteria.

Accordingly, for all the reasons stated, remand is required. On remand, the Court directs the ALJ to specifically examine (1) whether Black demonstrated a deficit in adaptive functioning with an onset before age 22; and (2) whether his IQ score of 71 provides a basis for a determination of equivalency. If the ALJ finds that Black's impairment does not meet Listing 12.05C, he must provide clear reasons why.

### III. Appropriate Remedy

Plaintiff argues that this matter should be remanded solely for calculation of benefits because he meets all the requirements for Listing 12.05 and is therefore disabled under the Act. ECF No. 12-1, at 30-31.

Remand for calculation of benefits is appropriate where the record persuasively demonstrates the claimant's disability and there is no reason to conclude that additional evidence might support the Commissioner's position that the claimant is not disabled. *Gibbs v. Colvin*, 155

F. Supp. 3d 315, 321 (W.D.N.Y. 2015) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) and *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004)). Reversal for calculation of benefits is also particularly appropriate where a person's claim for benefits has been pending for a long time and "additional administrative proceedings would only lead to further delay." *Id.* (quoting *McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004)). At the same time, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

Here, although the Court is sympathetic to the fact that Plaintiff's application has been pending for over nine years, remand solely for calculation of benefits would be inappropriate because "this is not a situation where application of the correct legal standard could lead to only one conclusion." *Hill v. Astrue*, No. 1:11-CV-0505(MAT), 2013 WL 5472036, at *9 (W.D.N.Y. Sept. 30, 2013). It is Plaintiff's burden at step three to show that his impairment meets or equals the criteria for Listing 12.05. *See, e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). In particular, the record does not persuasively demonstrate that Plaintiff suffers from deficits in adaptive functioning as required by Listing 12.05. The ALJ may ultimately conclude on remand that Black's impairments do not meet or equal the Listing, however, "this possibility does not relieve the ALJ of his obligation to discuss the potential applicability of Listing 12.05C, or at the very least, to provide [Black] with an explanation of his reasoning as to why [his] impairments do not meet any of the listings." *Green*, 2016 WL 943620, at *12. Therefore, remand for further administrative proceedings is appropriate in this case.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 20, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court